**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| JEANIE JONES, | |
| PLAINTIFF, | |
| | |
| v. | Case No. 2:23-cv-4848-BHH |
| | |
| LAKESIDE RECEIVABLES SERVICES LLC, | |
| LAKESIDE RECEIVABLES LLC, | |
| BRIGHTWATER CAPITAL, LLC, | |
| RICHARD ZIOLKOWSKI, SR. and | |
| EDWARD BROWN, individually, | |
| DEFENDANTS | |
| | |

## PLAINTIFF'S COMPLAINT

1. This action arises out of violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., and the South Carolina Consumer Protection Code, S.C. Code Ann. § 37-5-108, *et seq*. by Defendants Lakeside Receivables LLC ("LR"), Lakeside Receivables Services LLC ("LRS"), Brightwater Capital, LLC ("Brightwater"), Richard Ziolkowski, Sr. ("Ziolkowski") and Edward Brown ("Brown").

2. Supplemental Jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), in that one or more defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5. Plaintiff resides in this District.

## PARTIES

6. Plaintiff, Jeanie Jones ("Plaintiff"), is an adult individual residing in North Charleston, SC, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and S.C. Code

Ann. § 37-1-301(10) and a "debtor" as the term is defined by S.C. Code Ann. § 37-1-301(14).

7. LRS is a New York business operating from Lockport, NY.

8. LRS is not registered to do business in South Carolina but can be served in the state of New York via its registered agent, CT Corporation System, 28 Liberty Street, New York, NY 10005.

9. LRS's website (www.lakesidercv.com/what-we-do) (last visited September 25, 2023) states the following:

> Third-party Debt Recovery
>
> No matter how hard you try to avoid it past due accounts are a part of issuing credit. The foundation of Lakeside is built on third-party collection services. Let us do our job while you focus on growing your business.

10. The principal purpose of LRS is the collection of debts using the mails and telephone and other means.

11. LRS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

12. LRS is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and S.C. Code Ann. § 37-1-301(28) and a "creditor" as the term is defined by S.C. Code Ann. § 37-1-301(13).

13. LR is a New York business operating from Lockport, NY.

14. LR is not registered to do business in South Carolina but can be served in the state of New York via its registered agent, The LLC at 27 Main St., Suite 103, Tonawanda, NY 14150.

15. LR's website (www.lsreceivables.com/services) (last visited May 31, 2022) before being taken down sometime after May 31, 2022, stated the following:

> Throughout our team of professional representative, debtors are expertly contacted for payment by our specialized teams. Urgency is conveyed to the debtor in a skillful, results-driven manner.

> As a 3rd party collection agency, Lakeside Receivables LLC performance is unmatched. Files placed for collection are managed by the highly trained staff and supported with state of the art technology.

16. The principal purpose of LR is the collection of debts using the mails and telephone and other means.

17. LR regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

18. LR is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and S.C. Code Ann. § 37-1-301(28) and a "creditor" as the term is defined by S.C. Code Ann. § 37-1-301(13).

19. Brightwater is a business entity operating from Maitland, Florida.

20. Brightwater is not registered to do business in South Carolina and does not have a registered agent in South Carolina, but can be served at its place of business at 850 Concourse Parkway South, Suite 120, Maitland, FL 82751, or as permitted by South Carolina or Florida law.

21. Brightwater's website (www.thebrightwatergroup.com) (last visited September 25, 2023) states:

> For consumers wishing to make a payment, contact Customer Service…
> …
> For consumers needing assistance with their account, dispute or validation of debt please contact the Compliance Department.
> …
> This is an attempt to collect a debt and any information obtained will be used for that purpose.

22. The principal purpose of Brightwater is the collection of debts using the mails and telephone and other means.

23. Brightwater regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

24. Brightwater is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and S.C. Code Ann. § 37-1-301(28) and a "creditor" as the term is defined by S.C. Code Ann. § 37-1-301(13).

25. Ziolkowski is a natural person, residing in the Lewiston, New York area.

26. Ziolkowski actively manages LR and/or LRS and directs its company policies. Ziolkowski directly or indirectly instructed the employees of LR and/or LRS to act in the manner they acted when attempting collections from Plaintiff as described in the paragraphs below.

27. Ziolkowski regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ziolkowski uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

28. Ziolkowski is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and S.C. Code Ann. § 37-1-301(28) and a "creditor" as the term is defined by S.C. Code Ann. § 37-1-301(13).

29. Brown is a natural person, residing in the Lockport, New York area.

30. Brown actively manages LR and/or LRS and directs its company policies. Brown directly or indirectly instructed the employees of LR and/or LRS to act in the manner they acted when attempting collections from Plaintiff as described in the paragraphs below.

31. Brown regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Brown uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

32. Brown is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and S.C. Code Ann. § 37-1-301(28) and a "creditor" as the term is defined by S.C. Code Ann. § 37-1-301(13).

## FACTUAL ALLEGATIONS

33. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account"). Specifically, the account is alleged to be a debt owed or formerly owed to Mariner Finance or Mariner Financial Services as a result of an alleged pay day loan, the funds from which were used for various personal effects, but not for any business or commercial purpose whatsoever.

34. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and a "consumer credit transaction" as that term is defined by S.C. Code Ann. § 37-1-301(11).

35. After the Account was created, Plaintiff's husband died and left Plaintiff in a perilous financial situation.

36. Barely able to pay for groceries without her husband's support, Plaintiff fell behind on the Account.

37. The Account allegedly went into default.

38. Plaintiff admits the existence of the Account, but disputes the amount defendants attempted to collect from her.

39. Plaintiff requests that defendants cease all further communications regarding the Account.

40. After the Account allegedly went into default, the Account was placed with, or otherwise transferred to Brightwater for collection.

41. Prior to purchasing the Account, Brightwater advertised its services and business in South Carolina via the internet.

42. Brightwater purchased defaulted loans that originated in South Carolina and that were extended to South Carolina residents, from one or more lenders located in South Carolina.

43. Brightwater knowingly operated its business in a way so as to receive inquiries from residents of South Carolina about the status of accounts purchased on which those South Carolina residents were obligated.

44. Brightwater knew that by purchasing defaulted accounts originating in South Carolina and on which South Carolina residents were obligated it would be bound by South Carolina laws and could be haled into court in South Carolina.

45. Thereafter, Brightwater hired LR and/or LRS to collect the Account on its behalf.

46. On information and belief, LR and LRS are essentially the same company, sharing common ownership and/or employees and/or management and/or office space.

47. On information and belief, LR and LRS acted in concert one with another and/or operated their business in such a way that they formed a joint enterprise in their effort to collect the Account from Plaintiff.

48. Hereinafter, the efforts of LR and LRS are treated as one and are referred to as "LR Enterprise."

49. LR's collector(s) were employee(s) of LR at all times mentioned herein.

50. LR acted at all times mentioned herein through its employee(s).

51. LRS's collector(s) were employee(s) of LRS at all times mentioned herein.

52. LRS acted at all times mentioned herein through its employee(s).

53. During the entire course of the collection efforts against Plaintiff, Brown had active control or operation of the management of LR Enterprise by instructing LR Enterprise's employees and/or agents acting on its behalf in the course of their employment/agency with LR Enterprise.  Brown taught all employees and/or agents acting on behalf of LR Enterprise the specific techniques to use in their collection attempts described in the paragraphs below, or otherwise knew about and ratified the techniques used by the employees and/or agents acting behalf of LR Enterprise.

54. LR Enterprise was governed by Brown and required one or more of LR Enterprise's employees and/or agents acting on its behalf to act in the fraudulent manner described below in order to obtain revenue.

55. During the entire course of the collection efforts against Plaintiff, Ziolkowski was the owner of LR Enerprise (or otherwise owned it via control of one or more holding

companies that owned it) had active control or operation of the management of LR Enterprise by instructing LR Enterprise's employees and/or agents acting on its behalf in the course of their employment/agency with LR Enterprise. Ziolkowski taught all employees and/or agents acting on behalf of LR Enterprise the specific techniques to use in their collection attempts described in the paragraphs below, or otherwise knew about and ratified the techniques used by the employees and/or agents acting behalf of LR Enterprise.

56. LR Enterprise was governed by Ziolkowski and required one or more of LR Enterprise's employees and/or agents acting on its behalf to act in the fraudulent manner described below in order to obtain revenue.

57. During the one year prior to the filing of this complaint, on approximately October 7, 2022, LR Enterprise employees and/or agents called Plaintiff and told Plaintiff that if Plaintiff did not repay the Account, her car would be taken away from her.

58. LRS Enterprise employees repeated this threat multiple times.

59. The statements described in the paragraph and paragraphs above were made to Plaintiff in order to cause her to fear that LR Enterprise was about to sue Plaintiff and use involuntary methods of collection to recover the amount owed on the Account despite the fact that LR Enterprise had no intention of suing Plaintiff and had no legal right to involuntary collect on the Account.

60. LR Enterprise employees were rude and belittling to Plaintiff.

61. LR Enterprise failed to ever provide Plaintiff with notice of her rights to dispute the validity of the debt in question.

62. In almost every verbal communication, LR Enterprise failed to inform Plaintiff that it was a debt collector or that it was attempting to collect a debt or that any information obtained from Plaintiff would be used for the purpose of debt collection.

63. LR Enterprise failed to provide Plaintiff with meaningful disclosure of its identity in one or more of its phone calls with Plaintiff.

64. All of the defendants intended for Plaintiff to suffer extreme anxiety and fear as a result of all of the communications directed to her.

65. The purpose for which the defendants intended to cause Plaintiff's extreme anxiety and fear was to coerce a payment from Plaintiff on the Account.

66. The telephone calls each constituted a "communication" as defined by 15 U.S.C. § 1692a(2).

67. The only reason that LRS and/or representative(s), employee(s) and/or agent(s) of LRS made telephone call(s) to Plaintiff was to attempt to collect the Account.

68. The statements and actions of LR Enterprise and its representative(s), employee(s) and/or agent(s) constitute illegal communication in connection with debt collection and violate 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) and 15 U.S.C. § 1692g and S.C. Code Ann. § 37-5-108(2)&(5)(b)(xi)(aa)&(bb)&(5)(c)(ii)&(iv).

69. All of the conduct by LR Enterprise and/or its employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

70. Brightwater, directly or indirectly, exerted influence over LR Enterprise and Ziolkowski and Brown and caused each of them to act in the manner that each did with respect to Plaintiff.

71. Brightwater knew that LR Enterprise and Ziolkowski and Brown repeatedly or continuously engaged in collection practices as described above.

72. During all times pertinent hereto, Ziolkowski (a) created the collection policies and procedures used by LR Enterprise, and its respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of LR Enterprise, (c) oversaw the application of the collection policies and procedures used by LR Enterprise and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by LR Enterprise and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by LR Enterprise and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by LR Enterprise and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

73. Ziolkowski knew that LR Enterprise repeatedly or continuously engaged in collection practices as described above.

74. During all times pertinent hereto, Brown (a) created the collection policies and procedures used by LR Enterprise, and its respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of LR Enterprise, (c) oversaw the application of the collection policies and procedures used by LR Enterprise and their employees and agents,

(d) drafted, created, approved and ratified the tactics and scripts used by LR Enterprise and its employees and agents to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by LR Enterprise and its employees and agents in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, ratified and benefitted financially from the unlawful debt collection practices used by LR Enterprise and its employees and agents in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

75. Brown knew that LR Enterprise repeatedly or continuously engaged in collection practices as described above.

76. Brightwater knew that LR Enterprise repeatedly or continuously engaged in collection practices as described above.

77. Ziolkowski acted at all times mentioned herein personally and through the employee(s) of LR Enterprise.

78. Brown acted at all times mentioned herein personally and through the employee(s) of LR Enterprise.

79. LR Enterprise and Ziolkowski and Brown, and their respective agents and employees, knew that the information provided to Plaintiff was false.

80. LR Enterprise and Ziolkowski and Brown and their respective agents and employees told Plaintiff the above false information in order to trick, deceive and manipulate Plaintiff into transmitting money to LR Enterprise (and indirectly to Ziolkowski and Brown and Brightwater, as well).

81. As a consequence of LR Enterprise's collection activities and communication(s), Plaintiff seeks damages pursuant to 15 U.S.C. § 1692k(a) and S.C. Code Ann. § 37-5-108(2).

## **RESPONDEAT SUPERIOR**

82. The representative(s) and/or collector(s) at LR were employee(s) and/or agents of LR at all times mentioned herein.

83. The representative(s) and/or collector(s) at LR were acting within the course and/or scope of their employment at all times mentioned herein.

84. The representative(s) and/or collector(s) at LR were under the direct supervision and control of LR at all times mentioned herein.

85. The actions of the representative(s) and/or collector(s) at LR are imputed to their employer, LR.

86. The representative(s) and/or collector(s) at LRS were employee(s) and/or agents of LRS at all times mentioned herein.

87. The representative(s) and/or collector(s) at LRS were acting within the course and/or scope of their employment at all times mentioned herein.

88. The representative(s) and/or collector(s) at LRS were under the direct supervision and control of LRS at all times mentioned herein.

89. The actions of the representative(s) and/or collector(s) at LRS are imputed to their employer, LRS.

90. Ziolkowski and Brown and Brightwater were aware of and profited from the collection methods and practices used by employees of LR and LRS.

91. The actions and inactions of the employee(s) and/or agents of LR and LRS are imputed to Ziolkowski and Brown and Brightwater.

## <u>COUNT I:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq.</u>

92. The previous paragraphs are incorporated into this Count as if set forth in full.

93. LRS and LR violated 15 U.S.C § 1692d(6) and 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) by:

      a.   Implying and/or directly stating to Plaintiff that a lawsuit had been or would be filed against her;

      b.   Impliedly and/or directly threatening to have Plaintiff's automobile taken away from her if the Account was not repaid;

94. These communications caused Plaintiff to believe that legal action against her soon would be initiated despite the fact that none of the defendants had initiated, nor had the present intent of initiating, legal action against her if she did not pay the Account, in violation of 15 U.S.C. § 1692e(2).

95. These communications caused plaintiff to believe that LRS and/or LR was, or represented, an attorney who had or soon would bring a case against her, in violation of 15 U.S.C. § 1692e(3).

96. These communications caused Plaintiff to believe that seizure, garnishment, attachment, or sale of any property or wages would result from LRS's and/or LR's actions despite the fact that LRS had no authority or intent to do any of these things, in violation of 15 U.S.C. § 1692e(4).

97. These communications caused Plaintiff to believe that LRS and/or LR was going to do things in pursuit of collecting the Account that LRS and/or LR did not have the authority or intent to do, in violation of 15 U.S.C. § 1692e(5).

98. These communications communicated information regarding Plaintiff's account that was known by LRS and/or LR to be false, in violation of 15 U.S.C. § 1692e(8).

99. These communications used false representations or deceptive means, in violation of 15 U.S.C. § 1692e(10).

100. LRS's and/or LR's failure to inform Plaintiff, within five days of its first communication with Plaintiff, of her rights to dispute the debt in question was a violation of 15 U.S.C. § 1692g.

101. Ziolkowski is liable to Plaintiff for the acts of LRS and/or LR in violation of the statutes described above because he influenced and/or established the policies and procedures of LRS and/or LR and instructed LRS's and/or LR's employees to act in the manner they did when communicating with Plaintiff.

102. Brown is liable to Plaintiff for the acts of LRS and/or LR in violation of the statutes described above because he influenced and/or established the policies and procedures of LRS and/or LR and instructed LRS's and/or LR's employees to act in the manner they did when communicating with Plaintiff.

103. Brightwater is liable to Plaintiff for the acts of LRS and/or LR and/or Ziolkowski and/or Brown in violation of the statutes described above because Brightwater influenced and/or established the policies and procedures of LRS and/or LR and/or Ziolkowski and/or Brown and instructed LRS's and/or LR's and/or Ziolkowski's and/or Brown's employees to act in the manner they did when communicating with Plaintiff.

104. Plaintiff suffered actual damages in the form of emotional distress as a proximate result of the actions or inactions of Defendants.

105. Pursuant to 15 U.S.C. § 1692k Plaintiff seeks actual and statutory damages, reasonable attorney's fees and costs from Defendants.

## COUNT II:  VIOLATIONS OF THE SOUTH CAROLINA CONSUMER PROTECTION CODE, S.C. CODE ANN. § 37-5-108, et seq.

106. The previous paragraphs are incorporated into this Count as if set forth in full.

107. LRS and LR violated S.C. Code Ann. § 37-5-108(2)&(5)(b)(xi)(aa)&(bb)& (5)(c)(ii)&(iv) by:

    a.   Implying and/or directly stating to Plaintiff that a lawsuit had been or would be filed against her;

    b.   Impliedly and/or directly threatening to have Plaintiff's automobile taken away from her if the Account was not repaid;

108. These communications caused Plaintiff to believe that legal action against her soon would be initiated despite the fact that none of the defendants had initiated, nor had the present intent of initiating, legal action against her if she did not pay the Account, in violation of S.C. Code Ann. § 37-5-108(2)&(5)(b)(xi)(aa)&(bb)&(5)(c)(ii)&(iv).

109. These communications caused plaintiff to believe that LRS and/or LR was, or represented, an attorney who had or soon would bring a case against her, in violation of S.C. Code Ann. § 37-5-108(2)&(5)(c)(iii).

110. Ziolkowski is liable to Plaintiff for the acts of LRS and/or LR in violation of the statutes described above because he influenced and/or established the policies and procedures of LRS and/or LR and instructed LRS's and/or LR's employees to act in the manner they did when communicating with Plaintiff.

111. Brown is liable to Plaintiff for the acts of LRS and/or LR in violation of the statutes described above because he influenced and/or established the policies and procedures of

LRS and/or LR and instructed LRS's and/or LR's employees to act in the manner they did when communicating with Plaintiff.

112. Brightwater is liable to Plaintiff for the acts of LRS and/or LR and/or Ziolkowski and/or Brown in violation of the statutes described above because Brightwater influenced and/or established the policies and procedures of LRS and/or LR and/or Ziolkowski and/or Brown and instructed LRS's and/or LR's and/or Ziolkowski's and/or Brown's employees to act in the manner they did when communicating with Plaintiff.

113. Plaintiff suffered actual damages in the form of emotional distress as a proximate result of the actions or inactions of Defendants.

114. Pursuant to S.C. Code Ann. § 37-5-108(2) Plaintiff seeks an injunction and actual and statutory damages from Defendants.

### COUNT III:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)

115. The previous paragraphs are incorporated into this Count as if set forth in full.

116. Defendants engaged in extreme and outrageous conduct by falsely stating or implying that Plaintiff had been sued, that her car would be repossessed if the Account was not immediately repaid.

117. The conduct of Defendants as described above was intentional and it intruded on Plaintiff's solitude, seclusion, or private affairs in such a way that would be highly offensive to a reasonable person.

118. Plaintiff suffered serious emotional distress as a result of Defendants' conduct in that she suffered severe emotional distress, anxiety and fear.

## COUNT VI:  EXEMPLARY DAMAGES

119.    The previous paragraphs are incorporated into this Count as if set forth in full.

120.    Exemplary damages should be awarded against Defendants because the harm with

respect to which Plaintiff seeks recovery of exemplary damages resulted from malice

(which means that there was a specific intent by Defendants to cause substantial

injury or harm to Plaintiff) and/or gross negligence (which means that the actions

and/or omissions of Defendants (i) when viewed objectively from the standpoint of

Defendants at the time of the acts and/or omissions, those acts and/or omissions

involved an extreme degree of risk, considering the probability and magnitude of

potential harm to others and (ii) were such that Defendants had an actual, subjective

awareness of the risk involved but nevertheless proceeded with conscious

indifference to the rights, safety, or welfare of  others).

## JURY TRIAL DEMAND

121.    Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

122.  Judgment in favor of Plaintiff and against Defendants, jointly and severally, as follows:

a.  Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

b.  Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. §

1692k(a)(2);

c.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

d.  Actual damages pursuant to S.C. Code Ann. § 37-5-108(2);

e.  Statutory damages an amount not less than $100.00 nor more than $1,000.00

pursuant to S.C. Code Ann. § 37-5-108(2);

f.  An injunction prohibiting Plaintiff from acting the manner described herein

pursuant to S.C. Code Ann. § 37-5-108(2);

g.  Exemplary (punitive) damages pursuant to the common law of South Carolina; and

h.  Such other and further relief as the Court deems just and proper.

Respectfully submitted,

MARY LEIGH ARNOLD P.A.
 /s/ Mary Leigh Arnold
Mary Leigh Arnold (Fed. Id. No. 3856)
sammie@maryarnoldlaw.com
749 Johnnie Dodds Blvd, Suite B
Mount Pleasant, S.C. 29464
p. 843.971.6053
*ATTORNEY FOR PLAINTIFF*